7238

CONNOR v. McCOY.

1. SALE—JUDGMENT ROLL.—IN COLLATERAL ATTACK, a judicial sale made and confirmed in a case which has not been made into a judgment roll by the clerk or entered on the abstract of judgments and which by him has been permitted to be removed from office is valid. Sections 300, 301, Code of Proc., considered.

2. IBID.—PARTITION—REAL PROPERTY—FRAUD.—Under a consent order in partition lands lying in one county may be sold in another, and such sale alone is no indication of unfairness or fraud.

3. PARTITION.—An action for partition brought within twelve months after death of ancestor by administrator for ascertainment and payment of debts is not premature.

4. SALE.—INADEQUACY OF PRICE is not a sufficient ground to set aside a judicial sale under a proceeding otherwise regular.

5. PARTITION proceedings held to cover the interest of the parties in their father's and mother's lands.

Before  MEMMINGER,  J.,  Berkeley,  March,  1908.
Affirmed.

Action by Jos. J. Connor *et al.* against A. E. McCoy.
The Circuit decree is:

"This cause was marked 'heard' at the last regular term of
Court for Berkeley county, and, by agreement of counsel,
was argued before me at my chambers, at Charleston,
March 12, 1908, the hearing and argument occupying the
greater part of that day, five attorneys participating therein,
to wit: Mr. Holman and Mr. Mann, on behalf of the plain-
tiffs, and Mr. Glaze, Mr. Gruber and Mr. Raysor, for
defendant.

"My decision is to be based upon an agreed statement of
facts and certain testimony taken by deposition, and the
whole record, which was produced and read or referred to.
A fair statement of the facts out of which this controversy
arose is about as follows:

"On June 18, 1876, Morgan C. Connor conveyed to
Catherine M. E. Connor, his wife, the two tracts of land in
Berkeley county, described in the complaint herein, and
which are sought to be recovered by the plaintiffs in this
action.  Catherine M. E. Connor died intestate in 1879,
seized and possessed of the property, leaving as her heirs
her said husband and five children, to wit: Lessie C. Rion
(born Connor), Jos. J., Harry L., Tilden J. and St. Julien
Connor.  Morgan C. Connor was married again in 1883 to
Minnie E. McCoy, a sister of the defendant herein, and by
this marriage had one child, Minnie Clyde Connor.  He
died intestate in 1889.  Soon afterwards his widow, Minnie
E. Connor, took out letters of administration on his estate.
About April 20, 1889, she, as administratrix of her said
husband and in her own right, brought an action in Col-
leton county against his children and certain creditors for
the purpose of marshalling the assets of his estate, and
for a settlement of the same, and for a partition of the lands

described in the complaint; being certain lands in St. George, then Colleton, county, owned absolutely by him, and the lands as described in the complaint herein in Berkeley county. In that action the plaintiff was represented by Izlar & Glaze, of Orangeburg, who first associated with them Howell, Murphy & Farrar, of Walterboro. It was afterwards ascertained that A. T. Rion, a client of these latter gentlemen, had acquired an interest in the real estate of Catherine M. E. Connor and Morgan C. Connor by the purchase of the interest of Harry L. Connor, one of their children and a defendant in the action, and it was agreed that they should withdraw from plaintiffs' side and represent said A. T. Rion and wife and also the other defendants. A. T. Rion, on their motion, was made a defendant, and he and the other defendants, except the infants, were represented by Howell, Murphy & Farrar. Fishburne & Tracy, of Walterboro, were then associated with Glaze & Herbert as attorneys for plaintiff. At the time of the commencement of that action Tilden St. Julien and Minnie Clye Connor were infant defendants. The defendants were all personally served, and on proper petitions and orders, John D. Edwards, of the Walterboro bar, was duly appointed guardian *ad litem* of the three infant defendants; filed his answer for them and represented them as attorney in the cause. All the parties were properly before the Court. The cause was referred to C. C. Henderson, master for Colleton county. On October 25, 1890, he filed a report, wherein he has computed the interests of all the parties in all of the real estate described in the complaint; has called in creditors, and finding that there is a question of rents and profits arising out of the defense set up in the answer which cannot be determined, recommends a sale of the property, the proceeds to be held subject to the further order of the Court. Whereupon, on November 1, 1890, Judge Jas. Aldrich, presiding at a regular term of Court in Colleton county, ordered the report confirmed and

the sale made, and entered upon the Common Pleas calendar No. 2, page 127, October term, 1890, the following entry, under the head of Remarks, opposite the entry of said cause of *Connor, as Admrx. etc.,* v. *Lessie C. Rion et al.:* "Order (consent) confirming report of master for sale of realty, etc., continued.' This order of Judge Aldrich was duly recorded by the clerk at said term and transcribed into his journal, and pursuant thereto the master sold the property at public auction at Walterboro and conveyed to A. E. McCoy, the highest bidder therefor, for $383. And on October 19, 1892, said master filed his report of sales and disbursements, showing that all claims had been adjusted, and this report was confirmed by an order of Judge Hudson, presiding Judge, November 3, 1892. All of which orders and reports were duly recorded by the clerk during the respective terms at which they were made.

"The papers in the cause were at some time or other taken from the clerk's office, and no regular 'Judgment Roll' or abstract of judgment was made up and filed until it was discovered, after the commencement of this action, that the papers were missing and no judgment roll had been made up. The papers now constituting this judgment roll were found by Mr. Gruber, who succeeded to the office formerly occupied by Howell, Murphy & Farrar, now all deceased, on a suggestion of Mr. Glaze that he search among their papers, and were at once taken to the clerk's office and duly entered.

"The defendant herein received and has his deeds from the master for the lands sold, but did not record his deeds until December 6, 1906. He has been continuously in possession of the property since his purchase from the master, and has greatly improved the property and made it valuable

"The present action was begun January 2, 1907, first on a complaint in the usual form for the recovery of the possession of real estate. The complaint was afterwards amended, and as amended contains two causes of action,

the second being in the nature of an equitable cause of action, whereby it is sought to have the sale to defendant in the former action declared void on the grounds fully therein set out and hereinafter adverted to.

"The plaintiffs, Jos. J., Tilden J. and St. Julien Connor, in the present action were parties defendant in the former action, and the plaintiffs, David E. L. Connor and Hazel Byrd are children of Harry L. Connor, deceased, who was one of the children of Morgan C. Connor and Catherine M. E. Connor, and who was also a defendant in that action. The minority of one of these defendants arrests the Statute of Limitations as against them.

"I do not think it necessary to incorporate herein a full statement, even of the substance of the pleadings in this action, as to do so in the briefest possible way would make this opinion, as lengthy as it must be otherwise, without necessity, a very much more lengthy document; and I will proceed to discuss the questions arising under the pleadings in the light of the foregoing history leading up to the controversy and now for determination.

"I do not find any of these questions difficult of decision. They have been very elaborately argued on behalf of the defendant, apparently out of a superabundance of caution, whereby every maze and labyrinth of the law and logic pertaining to these questions has been applied and interestingly explained.

"The two questions on which this decision rests are: First, whether the proceedings set up as a complete bar to the right of plaintiffs to recover at all in this action embrace the rights of the plaintiff in all of the property involved in this action, to wit: that which they inherited through their mother, Catherine M. E. Connor, as well as from the father, Morgan C. Connor, or only the one-third interest of the property, which the father inherited from the mother, and they in turn from their father.

"Plaintiffs take the view that the proceedings only embraced the father's one-third in the mother's estate, even if it be maintained as a valid and binding proceeding. Defendant contends that it covers both the one-third of the father and the two-thirds from the mother.

"Second, if the proceeding covers the whole property, the two-thirds and the one-third, was it a valid and binding proceeding? If so, this action must fail entirely.

"As my decision answers both of these questions in the affirmative, there is no use to state or discuss any other questions which might arise under the pleadings had a different decision been reached. The defendant holds, and for years has held, the property by deed from the master in a judicial proceeding, and it is the well-settled policy of the law to support judicial sales if it can be done without injuring any one or the violation of any principle. *Cathcart* v. *Suguheimer,* 18 S. C., 126.

"This action is not a direct proceeding to invalidate said proceedings, but a collateral proceeding in which their integrity is sought to be assailed. All proceedings are collateral unless brought in the cause in which the judgment was rendered and for the purpose of setting it aside. *Turner* v. *Malone,* 24 S. C., 404; *Tederall* v. *Bouknight,* 25 S. C., 28, and *Sanders* v. *Price,* 56 S. C., 7, 33 S. E., 731. Can the record here pleaded bear the brunt of a collateral attack? Not, is it vulnerable in a direct proceeding?

"When plaintiff begun this action there was no judgment roll or entry in book of abstract of judgments by the clerk in the cause of *Connor as Admrx. etc.* v. *Rion et al.,* in which cause sale had been made to defendant herein. The papers in the cause had passed before the Court and had been recorded by the clerk and action taken thereunder, and the sale made thereunder confirmed, but the clerk had parted with possession of the papers—had never gotten them together and made up a judgment roll or abstract of judg-

ment in compliance with Secs. 300 and 301 of the Code.   Is
this such a fatal defect as in a collateral proceeding will
cause the Court to hold that the title derived from the sale
is void upon its face, as was an execution under which levy
was made before entry of judgment by the clerk in the case
of *Mason* v. *Kellough Music Co.,* 45 S. C., 117, 22 S. E.,
753? I think not. The principal therein involved is
totally different and that rule therein, herein earnestly
invoked, is inoperative. To hold otherwise would put it
entirely within the power of the clerk to make a judicial sale
void, and nullify the decree of the Court by failing to com-
ply with these sections. I regard these requirements as
merely directory and ministerial and not jurisdictional such
as statutory requirements whereby alone certain judgments
can be made effective as in the Malone case, where some-
thing was required by law to be done before the judgment
obtained force and not relating back to and invalidating the
decree of the Court in pursuance of which and without
further requirement action had been taken. The case of
*Christian* v. *Leberachultz,* 18 S. C., 602, is very much in
point. There 'a *cestui que trust* brought action against the
nominated trustee (who declined to serve), and her infant
children, who were also beneficiaries under the trust deed,
for the purpose of having a trustee appointed and for a
sale of the trust property and a reinvestment of the pro-
ceeds. Under this proceeding a new trustee was appointed
and directed to sell the land held in trust, which he did.
The papers were all entitled the Court of Common Pleas,
and were regular in all respects, except that the case nowhere
appeared upon the dockets of the Court. The records were
not filed in the clerk's office until after the action was
brought, and the Circuit decree bore date at a time when
the Courts of that county were not in session. The mother
died, and this action was instituted by her children against
the purchaser for the possession of the land and the rents
and profits. The complaint was dismissed by Judge

Aldrich, and plaintiffs appealed. Held: That the objection to the introduction of the decree in the former action upon the ground that it did not appear upon its face that the Court had jurisdiction, was not well taken. If such decree had been passed at chambers, it would have been invalid, but in the absence of all testimony (except as above stated) it must be assumed that the cause was heard in open Court. The failure to file the decree did not affect the validity.'

"The very fact herein apparent that the papers from which the clerk was to have made up the judgment roll were found in the office of the deceased attorneys of the then defendants, the parties now complaining, in the *Connor* v. *Rion* case, shows how perilous it would be to hold that because the papers had gotten away from the clerk's possession before he could make up the roll and enter on the abstract of judgment, therefore, the sale made under the nevertheless duly made and recorded decree was void. Parties who have taken away records and thereby precluded the clerk from complying with Sections 300 and 301 would then be in a position to avail themselves of their own wrong and have a sale avoided. That would be *reductio ad absurdum.*

"These entry statutes are directory and to effect notice, not to enable parties to avoid the consequences of judicial proceedings. *Clark* v. *Melton,* 19 S. C., 506. It is true the purchaser at a judicial sale takes at the peril of the Court not having the jurisdiction of the subject matter, and the parties. These points, however, being established, mere irregularities will not defeat his title; undoubtedly so after order of confirmation. *Freer* v. *Tupper,* 21 S. C., 82, is conclusive upon this point. The order of confirmation gives to the sale the judicial sanction of the Court, and when made it relates back to the time of the sale and cures all defects and irregularities, except those founded on want of jurisdiction or fraud.

"As against the validity of the proceedings in the *Connor v. Rion* suit, it is further urged that, although some of the land involved lay in Colleton county and some in Berkeley county, and, therefore, all might be partitioned in the same proceeding in one county (*Daniels* v. *Morse,* 12 S. C., 140), yet the sale of the land here in question should have been in Berkeley county, where the land lies, and not in Colleton county, where the St. George lots lay. The decree of sale was by consent. See testimony as to entry on calendar by Judge Aldrich, who signed the decree. That there was in fact no such consent, the record declaring that there was, can not be made to appear in a collateral proceeding. *Kaylor* v. *Hiller,* 77 S. C., 393, 58 S. E., 2. Being by consent, the property could be legally sold in Colleton under the provisions of Sec. 975, Vol. I, of the Code of Laws, and the similar provision in Sec. 306, Vol. II. Both these provisions were then of force. Even were it otherwise, the sale having been confirmed, this objection could not now prevail. *Freer* v. *Tupper,* 21 S. C., 75.

"Passing on to the grounds urged in support of the second or equitable cause of action, set out in the complaint, which have been earnestly and forcefully supported, especially in the written argument submitted by Mr. Mann, on behalf of the plaintiffs, to wit: That the Connor-Rion action was prematurely brought, being within one year after the death of Mr. Connor. The case of *Ex parte Worley,* 49 S. C., 41, 26 S. E., 949, relied upon, has no application. The rule there laid down was that such an action (for partition) is premature unless the administratrix be a party or provision is made for debts. This action was by the administratrix and was for ascertainment and payment of debts primarily.

"Secondly, inadequacy of price is not established by the testimony, and this, even if established, standing alone as

I find it would here, would not be sufficient upon which to set aside a judicial sale otherwise regular. *Ex parte Alexander,* 35 S. C., 416, 14 S. E., 854; *Young* v. *Teague,* Bailey's Eq., 19.

"Next, that the failure to make up and enter the judgment roll obtained to chill the bidding. The testimony shows that the sale was known and attended, that the price was fair, and a bid over that made by one of the parties then defendant, who was present at the sale. Nor, as a practical matter, can any weight be given to this idea. Every one knows that people do not examine titles before bidding at a judicial sale. It is well known that the rule of *caveat emptor* does not apply to a purchaser at a judicial sale of real estate. Besides, the decree had been recorded. It was not the final decree in the cause, and no complete judgment roll, as contemplated by Secs. 300 and 301, could at that time have been made up. Had the prospective bidder looked into the record at that time he would have found it all regular. It is because it was not since completed to the utmost ministerial act that plaintiffs herein now claim defendant's purchase was invalid, and that, too, as against them, when they were parties to the action, the Court having jurisdiction over the persons and the property in question, and they having afterwards shared in the proceeds of such sale, which was duly confirmed, after having been duly complied with. The very statement of the proposition carries with it its own refutation.

"Then the question that the sale being made in Colleton county instead of Berkeley as an indication of unfairness and fraud. The legal aspect of this point has already been disposed of. As a fact it would have been unusual to have sold part of the property partitioned in one county and part in another. Mt. Pleasant, then the county seat of Berkeley county, was more remote and inaccessible than Walterboro, I do not think there is anything suspicious or 'crooked' about this circumstance. Nor is the

circumstance now stressed that the property was bought by the brother of the plaintiff in that action. On the contrary, it may be that such relationship and consequent natural desire to help them out induced the purchase. He says in his testimony that he did not want the land, that it was then of no value to him. Such lands were at that time of very little value, and it was hard to find a purchaser for them. The thing is as plausible one way as the other.

"Passing now in inverse order to the first question stated: Did the proceedings in *Connor* v. *Rion* cover the whole of the property derived from the common source?

"To my mind it plainly did. The whole record in the cause shows that the action was not alone for the settlement of the estate of the father and partition of the interest therein, but was also intended to effect partition of the real estate of the father and mother among all of the parties, the persons entitled thereto. To have attempted a partition of the undivided one-third interest of the father would have been, and must have seemed, had it been considered, round-about and useless, and why not the whole?

"The petitions and answers of the adult parties are very strong upon this point. Such lands were of insignificant value at that time, and a partition of a third interest in a few hundred acres of such land into a number of small portions would hardly have been contemplated and that, too, in view of the expense and difficulty of such a proceeding.

"But, furthermore, the Court under the scope of the pleadings assumed and exercised jurisdiction over the whole matter, as is shown by the reports of the master fixing the exact shares and interests of each of the parties, not alone in the real estate of the father, but in all of the real estate from the mother, the common source as well. The plaintiffs here now seek to have this Court construe that complaint as applying only to the father's property, but it is

too late; it has already been construed otherwise. It is a thing adjudged.

"There was no appeal, but the parties over whom and over whose property the Court had complete jurisdiction acquiesed and received their portions of the proceeds of the sale of all the property which, as has been herein found, was sold for full value as shown by the testimony. Furthermore, it is distinctly characteristic of a court of equity that it may adapt its decree to all the varieties of circumstances which may arise, and may vary, qualify, restrain and model the remedy so as to suit it to the mutual and adverse claims, controlling equities and the real and substantial rights of all the parties, and it is not only the right, but the duty, of the Court, when all the parties are before it, to adjust the rights of all and leave nothing open to litigation if it can be avoided. Enc. Pldg. & Prac.

"The plaintiffs here were all parties to the action, and were duly served and were properly before the Court, and it had jurisdiction over the subject matter and the parties. It is equally clear that the complaint was broad enough in its scope if nothing more to warrant the Court in making a decree for sale of the entire lands described therein, there being no other persons entitled thereto, and dividing the proceeds among the parties according to their respective rights. In *Motte* v. *Shand*, 1 Hill Ch., 146, the Court quoting from Lord Eldon, says: 'When a case is made out between the defendants by evidence arising from the pleadings and proof between plaintiffs and defendants, a court of equity is entitled to make a decree between the defendants; further, my Lords, a court of equity is bound to do so. The defendant chargeable has a right to insist that he should not be made a defendant in another suit for the same matter that may then be decided between him and his co-defendants, may insist that he shall not be obliged to institute another suit for a matter that may then be adjudged between the defendants, and if a court of equity refused to

so decree it would be good cause of appeal by either defendant.' See also *Bachler* v. *Farrow,* 2 Hill Ch., 111.

"Upon a consideration, therefore, of the whole matter, as well as upon the points hereinabove specifically discussed as upon those adverted to in the arguments, none of which have been overlooked or underrated, I am of the opinion that the defendant's second defense herein is complete, and obtains as an absolute bar to any recovery on behalf of the plaintiffs herein. And it is, therefore, ordered, that the complaint be dismissed."

From this decree the plaintiffs appeal.

*Messrs. W. A. Holman* and *M. M. Mann,* for appellants. *Mr. Holman* cites: *The former proceeding is not an estoppel here:* Code of Proc., 300, 301; 45 S. C., 11; 28 S. C., 79; 196 U. S., 533; 14 L. R. A., 393; 24 S. C., 407.

*Messrs. Glaze & Herbert, Raysor & Summers,* and *W. B. Gruber,* contra. *Messrs. Glaze & Herbert,* and *Raysor & Summers,* cite: *Judgment could not be enrolled before sale:* Code of Proc., 301, 266; 45 S. C., 14; 1 Black on J., sec. 106; 17 Ency., 768; 45 S. C., 323; 27 S. C., 426; 1 Bail., 611; 18 S. C., 602. *Failure to enroll does not effect validity:* 51 S. C., 140; 5 Ency., 385; 1 Green. Ev., 525; Frem. on J., sec. 606; 6 Rich. Eq., 302; 26 S. C., 581; 72 S. C., 321; 55 S. C., 398. *Complaint in former case gives Court jurisdiction to partition all the lands:* 21 Ency., 1185; 25 S. C., 405; 27 S. C., 369; 41 Am. Dec., 499; 2 Hill Ch.. 111; 10 Rich. Eq., 60; 3 Rich. Eq., 532; 1 Black on J., sec. 141; 5 Ency. P. & P., 958. *A consent decree is a solemn contract, not to be set aside:* 5 Ency. P. & P., 962; 25 Ind., 458; 34 Kan., 108; 16 Cyc., 481; 1 Hill Ch., 146; 31 S. C., 91. *Inadequate price is no ground for avoiding sale:* 35 S. C., 416; Bail. Eq., 19. *Lands properly sold in Colleton county:* Code of Proc., 306; Code, 1902, 974, 975; 1 Green., sec. 9; 48 S. C., 567;

77 S. C., 367; 5 S. C., 108; 10 S. C., 206; 16 S. C., 560; 2 Strob., 208; 13 S. C., 127. *Plaintiffs are now estopped from raising this question:* Rorer on Jud. Sales, sec. 240; 77 S. C., 312; 43 S. C., 176; 50 S. C., 96. *In collateral attack, this judgment is valid:* 25 S. C., 412; 22 S. C., 275; 16 S. C., 282; 35 S. C., 400; 24 S. C., 401; 56 S. C., 1.

July 17, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. The decree of his Honor, the Circuit Judge, is sustained for the reasons therein stated.